**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

MEECORP CAPITAL MARKETS, LLC,  §
                               §
       Plaintiff,              §
                               §
vs.                            §    C.A. NO. C-06-148
                               §
TEX-WAVE INDUSTRIES, LP, et al, §
                               §
       Defendants.             §
                               §

## ORDER DENYING MOTION TO DISMISS

On this day came on to be considered Defendants Rodrigo Ramon, Jr., Paula Wakefield, Sybil D. Tipton, Arlene Rodriguez, Amanda Vasquez, Abel Tamez, Elias R. Vasquez, and Anissa Zilka's "Motion to Dismiss for Legislative and Qualified Immunity" pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. 32.)  For the reasons discussed below, Defendants' motion is DENIED.

## I.   JURISDICTION

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

## II.  BACKGROUND

On March 30, 2006, Plaintiff Meecorp Capital Markets, LLC, ("Plaintiff") filed suit in this Court against Defendants Tex-Wave Industries, LP, Monty Guiles, David Croft, Ysassi & Ysassi, PC, and Epimenio Ysassi alleging breach of contract and negligent misrepresentation claims under Texas state law.  (Pl.'s Orig. Compl. at ¶¶ 2-6, 19-28.)  On June 14, 2006, Plaintiff amended its

-1-

complaint to add negligent misrepresentation and fraud claims against present and former officials of the City of Robstown, Texas: Rodrigo Ramon, Jr., Paula Wakefield, Sybil D. Tipton, Arlene Rodriguez, Amanda Vasquez, Abel Tamez, Elias R. Vasquez, and Anissa Zilka (the "Robstown Defendants").[1] (See Pl.'s Am. Compl. ("PAC") at ¶¶ 7-14, 38-53.) On July 6, 2006, the Robstown Defendants filed a motion to dismiss Plaintiff's claims against them based on immunity. (D.E. 32.) On July 24, 2006, Plaintiff filed a response to the motion to dismiss. (D.E. 33.) On July 25, 2006, Defendants Tex-Wave Industries, Monty Guiles, and David Croft also filed a response in opposition to the motion to dismiss and concurred with the content of Plaintiff's response to the motion. (D.E. 34.)[2] The following facts are alleged in Plaintiff's Amended Complaint:

On June 14, 2004, Plaintiff and Defendant Tex-Wave Industries ("Tex-Wave") entered into a loan agreement whereby Plaintiff lent

_____

[1] The City of Robstown was not named in Plaintiff's original or amended complaint and is *not* a Defendant in this action.

[2] On August 28, 2006, the Robstown Defendants filed an "Unopposed Motion for Leave" to file a reply to Plaintiff's response to the motion to dismiss. (D.E. 39.) The Court GRANTS the motion for leave and will consider the arguments raised in the Robstown Defendants' reply. On September 6, 2006, Plaintiff sought leave of court to file a "Surreply" to the Robstown Defendants' reply. (D.E. 41.) Courts have held, however, that a "sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." Murray v. TXU Corp., C.A. 03-0888P, 2005 WL 1313412 at *4 (N.D. Tex. 2005). The Court does not read the Robstown Defendants reply as raising new legal theories. Rather, the reply seems only to emphasize that discovery should not be allowed until the immunity issue is resolved. Therefore, Plaintiffs' "Motion for Leave to File a Surreply" is DENIED.

Tex-Wave a principal amount of $4,620,000.00.  (PAC at ¶ 17.)   In return, Tex-Wave executed three promissory notes in the amounts of $1,670,000.00, $1,622,000.00, and $1,288,000.00.  (PAC at ¶ 18.) As the primary security for the loan, the City of Robstown (the "City"), through its mayor Rodrigo Ramon, executed a "General Obligation Surety Bond/Guaranty" (the "Surety Bond") in favor of Plaintiff.  (PAC at ¶ 21.)   The Surety Bond provided that:

> in consideration of the Lender making the Loan to the Borrower, the Surety guarantees that the Borrower will pay the Lender, when due and payable, all amounts owing to the Lender . . . and in default thereof, the Surety shall pay to the Lender all amounts owing to the Lender by the Borrower . . . This Surety Bond is a general obligation of the Surety backed by the full taxing power of the Surety and payable from the general funds of the Surety.

(PAC at ¶ 21; Pl's Ex. G.)  Plaintiff required the execution of the Surety Bond before it would make the loan to Tex-Wave, and the Surety Bond expressly states that Plaintiff "would not make the Loan without the Surety providing this Bond to secure the repayment . . . of the loan."  (PAC at ¶ 21; Pl.'s Ex. G.)  The City had previously approved and authorized the execution of the Surety Bond in a resolution passed, and signed by the mayor, on April 12, 2004. (PAC at ¶ 24.)   The resolution authorizing the Surety Bond "expressly acknowledged the enforceability requirements of [the] Surety Bond and represented that the Surety would be jointly and severally liable to [Plaintiff] in the event of default by Tex-Wave."  (PAC at ¶ 40.)

On November 1, 2005, the loan went into default after Tex-Wave

failed to make its October interest payment of $48,125.00.  (PAC at
¶ 26.)  Tex-Wave also failed to make its November interest payment
of the same amount.  (PAC at ¶ 26.)  Plaintiff subsequently served
both Tex-Wave and the City of Robstown with written notice of the
default.  (PAC at ¶ 26.)  The City, however, did not pay Plaintiff
the amounts owing under the loan and, on February 10, 2006, filed
suit in Texas state court seeking a declaratory judgment that the
Surety Bond executed by the City was invalid and unenforceable
under Texas law.  (PAC at ¶¶ 26-27.)  Approximately a month later,
Plaintiff commenced the present suit in this Court.

## III. DISCUSSION

     "Motions to dismiss are viewed with disfavor and are rarely
granted."  Test Masters Educational Services, Inc. v. Singh, 428
F.3d 559, 570 (5th Cir. 2005); Lowrey v. Texas A & M Univ. Sys.,
117 F.3d 242, 247 (5th Cir. 1997).  In analyzing a motion to
dismiss,  "[t]he complaint must be liberally construed in favor of
the plaintiff, and all facts pleaded in the complaint must be taken
as true."  Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th
Cir. 1999).  The Court must also draw all reasonable inferences
from those facts in the plaintiff's favor.  Lovick v. Ritemoney
Ltd., 378 F.3d 433, 437 (5th Cir. 2004). Dismissal is proper only
where, viewing the facts in the light most favorable to the
plaintiff, "it appears beyond doubt that [the plaintiff] can prove
no set of facts in support of [its] claim which would entitle [it]

-4-

to relief." <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995); <u>see also</u> <u>Scanlan v. Texas A&M University</u>, 343 F.3d 533, 536 (5th Cir. 2003); <u>Lowrey</u>, 117 F.3d at 247 (stating that "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief").  Where a defendant moves to dismiss a case based on an affirmative defense, a successful "defense [must] appear[] clearly on the face of the pleadings" in order to justify dismissal.  <u>Clark v. Amoco Prod. Co.</u>, 794 F.2d 967, 970 (5th Cir. 1986); <u>see also</u> <u>Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas</u>, 20 F.3d 1362, 1366 (5th Cir. 1994) ("Moreover, when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate"); <u>Garrett v. Commonwealth Mortg. Corp. of America</u>, 938 F.2d 591, 594 (5th Cir. 1991) ("A court should therefore dismiss a case only if an affirmative defense or other bar to relief appears on the face of the complaint").

### A.   Motion to Dismiss Based on Immunities

The Robstown Defendants contend that Plaintiff's suit must be dismissed because they are entitled to "absolute legislative immunity . . . qualified immunity, official immunity and sovereign immunity" from Plaintiff's claims.  (Mot. to Dismiss at 1-2.)

### 1.   Qualified Immunity

The Robstown Defendants cite numerous federal authorities for

-5-

the proposition that they are entitled to "qualified" immunity from Plaintiff's claims against them.  Unlike the present case, however, which involves only state law claims, the authorities cited by the Robstown Defendants uniformly deal with suits brought against government employees under *federal* law.  It is well-settled that "[t]he federal doctrine of qualified immunity does not apply to claims brought under state law."  <u>City of Lancaster v. Chambers</u>, 883 S.W.2d 650, 655 n.2 (Tex. 1994) (quoting <u>Greiner v. City of Champlin</u>, 816 F.Supp. 528, 545 (D. Minn 1993)).  Rather, where claims are brought under Texas law, the immunity question is also governed by state law.  <u>See</u> <u>Grantham v. Avondale Industries, Inc.</u>, 964 F.2d 471, 473 (5th Cir. 1992) ("[w]hen state law creates a cause of action, the state is free to define the defenses to the claim, including the defense of immunity") (quoting <u>Ferri v. Ackerman</u>, 444 U.S. 193, 198 (1979)).  Thus, while a government employee enjoys "qualified" immunity from claims under federal law, he or she is entitled to "official" immunity from Texas state law claims.  <u>See</u>, <u>e.g.</u>, <u>Wren v. Towe</u>, 130 F.3d 1154, 1159-60 (5th Cir. 1997) (applying qualified immunity to federal claims and official immunity to state law claims); <u>Murray v. Earle</u>, 405 F.3d 278 (5th Cir. 2005) (same).[3]  Although the doctrines of official and

---

[3] Although Texas courts sometime use the term "qualified immunity" to refer to immunity under state law, courts have indicated that "official immunity" is the preferred term. <u>See</u>, <u>e.g.</u>, <u>Copeland v. Boone</u>, 866 S.W.2d 55, 56 n.2 (Tex. App.-- San Antonio 1993) (noting that the "terms qualified immunity and official immunity appear to have been used interchangeably in

qualified immunity are closely related, they are distinct and have certain key differences.  Cantu v. Rocha, 77 F.3d 795, 808-09 (5th Cir. 1996) (noting differences between the qualified and official immunity standards); City of Lancaster v. Chambers, 883 S.W.2d 650, 655-57 (Tex. 1994) (same).  Because the Plaintiff has not asserted any federal claims against the Robstown Defendants, they are not entitled to assert "qualified" immunity.  Therefore, the Robstown Defendants' motion to dismiss on this ground is DENIED.

### 2.   Legislative Immunity

The Texas Supreme Court "has recognized that individuals acting in a legislative capacity are immune from liability for those actions."  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).  Absolute legislative immunity, however, "applies to activities, not offices."  Bryan v. City of Madison, 213 F.3d 267, 272 (5th Cir. 2000); see also Joe, 145 S.W.3d at 157 (stating that immunity applies to legislators only when they are performing "legitimate legislative functions").  Therefore, "[n]ot all actions taken by an official with legislative duties . . . are protected by absolute immunity--only those duties that are functionally legislative."  Hughes v. Tarrant County, 948 F.2d 918, 920 (5th Cir. 1991).  Legislative immunity is an affirmative defense under Texas law, and therefore the burden is on the defendants "to show that the actions they took were functionally

---

some Texas courts . . . We prefer and will utilize the term official immunity").

-7-

legislative." <u>Lopez v. Trevino</u>, 2 S.W.3d 472, 473 (Tex. App.--San Antonio 1999); <u>Jim Sowell Const. Co., Inc. v. City of Coppell</u>, 82 F.Supp.2d 616, 617 (N.D. Tex. 1998).

The Texas Supreme Court has held that a function is legislative, and thus protected by immunity, if it "reflects a discretionary, policymaking decision of general application, rather than an individualized decision based upon particular facts." <u>In re Perry</u>, 60 S.W.3d 857, 860 (Tex. 2001); <u>Hays County v. Hays County Water Planning Partnership</u>, 69 S.W.3d 253, 259 (Tex. App.-- Austin 2002).   Likewise, the Fifth Circuit has developed two "general guidelines" for determining "whether a particular activity is legislative rather than administrative and therefore protected by immunity."   <u>Bryan</u>, 213 F.3d at 273.[4]   The Fifth Circuit described these guidelines as follows:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are legislative facts, such as generalizations concerning a policy or state of

---

[4] Although the <u>Bryan</u> and <u>Hughes</u> cases cited in this section involved suits under federal law, particularly 42 U.S.C. § 1983, the legislative immunity standards under both federal and Texas law are identical for the purposes of the present case.  <u>See</u> <u>In re Perry</u>, 60 S.W.3d 857, 859-60 (Tex. 2001) (citing numerous federal authorities); <u>see also</u> <u>Camacho v. Samaniego</u>, 954 S.W.2d 811, 823 (Tex. App.--El Paso 1997) (stating that "[b]ecause the jurisprudence of legislative immunity is not well developed in Texas, we will rely on federal authorities to assess the applicability of this form of immunity"); <u>Lopez v. Trevino</u>, 2 S.W.3d 472, 474 (Tex. App.--San Antonio 1999); <u>Bowles v. Clipp</u>, 920 S.W.2d 752, 758 (Tex. App.--Dallas 1996) ("Although federal law is not determinative of the scope of an immunity under Texas state law, an examination of federal immunity law is instructive").

-8-

> affairs, then the decision is legislative.  If the facts
> used in the decisionmaking are more specific, such as
> those that relate to particular individuals or
> situations, then the decision is administrative. The
> second test focuses on the particularity of the impact of
> the state action.  If the action involves establishment
> of a general policy, it is legislative; if the action
> single[s] out specific individuals and affect[s] them
> differently from others, it is administrative.

Hughes, 948 F.2d at 921 (citing Cutting v. Muzzey, 724 F.2d 259,

261 (1st Cir. 1984)); Bryan, 213 F.3d at 273; Lopez, 2 S.W.3d at

474) (applying these guidelines for immunity under state law).

In Hughes, for example, the plaintiff, a county employee,

asked the county commissioners court to pay his attorney's fees

resulting from a contempt proceeding.  Hughes, 948 F.2d at 919.

The commissioners denied the request, stating that they could not

legally pay the fees under Texas law, and the plaintiff sued.  Id.

The county commissioners argued they were entitled to legislative

immunity, but the Fifth Circuit disagreed.  The court held that the

commissioners were not entitled to legislative immunity even where

"the decision concerned the allocation of county monies" because:

> it was not based on legislative facts; it was not based
> on general facts regarding any policy, but instead, it
> was based on specific facts of an individual situation
> related to the district court clerk. Furthermore, the
> action did not purport to establish a general policy; it
> was particular to Hughes.

Id. at 921.  Similarly, in Lopez, the plaintiff, a school employee,

sued school officials alleging that they promised him a retirement

annuity but then subsequently voted against paying it.  Lopez, 2

S.W.3d at 473.  The Lopez court noted that the "mere fact that the

complained-of action occurred by way of vote does not automatically mean the action is legislative." Id. (citing Bartlett v. Cinemark USA, Inc., 908 S.W.2d 229, 235 (Tex. App.--Dallas 1995)). Rather, the court held that because "the underlying facts related specifically to [the plaintiff], and the action singled out [the plaintiff], a specific individual . . . the action was administrative, and [defendants] were not entitled to legislative immunity." Id. at 474.

In the present case, the Robstown Defendants have not met their burden of showing that the affirmative defense of legislative immunity clearly appears on the face of the pleadings. As the Hughes and Lopez cases demonstrate, the Robstown Defendants are not entitled to immunity merely because the complained-of action occurred by way of vote, or involved the City's financial liability. Rather, the Robstown Defendants are only entitled to immunity if their conduct was functionally legislative. The Amended Complaint, viewed in the light most favorable to the Plaintiff, however, shows that the conduct was not functionally legislative. Plaintiff's complaint does not seek to hold the Robstown Defendants liable for a policymaking decision of general application. Rather, Plaintiff complains that the Robstown Defendants knowingly or negligently misrepresented that City would pay the balance on the Tex-Wave loan in the event of a default by the borrower, and that the City's obligation would be backed by its full taxing power. (See PAC at ¶ 21; Pl's Ex. G.) Plaintiff also

-10-

claims that the Defendants misrepresented that the Surety Bond would be enforceable, and that the City would be jointly and severally liable to the Plaintiff in the event of default by Tex-Wave.  (PAC at ¶ 40.)   The Robstown Defendants, in making these promises, were not establishing a generally-applicable city policy. Rather it appears from the face of Plaintiff's complaint that the Robstown Defendants made a decision *particular* to Plaintiff and the Tex-Wave loan, and based their decision on the specific facts and circumstances surrounding that loan.   In this case, just as in Lopez, the Defendants are not entitled to legislative immunity because they allegedly promised to take a particular action for a specific individual, but later reneged on that promise.  See Lopez, 2 S.W.3d at 473-74.   Because the face of the amended complaint, viewed in the light most favorable to the Plaintiff, reveals that Plaintiff is suing the Robstown Defendants for an individualized decision based upon particular facts, legislative immunity does not apply.  Defendants' motion to dismiss on that ground is DENIED.

### 3.   Official Immunity

Even though the Robstown Defendants are not entitled to legislative immunity, they may still be entitled to official immunity.  Under Texas law, "[o]fficial immunity is an affirmative defense that protects government employees from personal liability."  Vela v. Rocha, 52 S.W.3d 398, 403 (Tex. App.--Corpus Christi 2001); see also Chambers, 883 S.W.2d at 653.   "Government

employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." Chambers, 883 S.W.2d at 653; see also Cantu v. Rocha, 77 F.3d 795, 808 (5th Cir. 1996).   In determining whether a government official acted with "good faith" the court must "ask whether a reasonably prudent official could have believed his or her conduct was consistent with the plaintiff['s] rights." Hernandez ex rel. Hernandez v. Texas Dept. of Protective & Regulatory Servs., 380 F.3d 872, 885 (5th Cir. 2004) (citing Cantu, 77 F.3d at 809).   In other words, to "show good faith, a government official must show that his acts were within the realm of what a reasonably prudent government official could have believed was appropriate at the time in question." Vela, 52 S.W.3d at 404. Like legislative immunity, official immunity is an affirmative defense, and therefore dismissal under Rule 12(b)(6) is only appropriate if pleadings reveal on their face that the defendants acted in good faith. See Kansa Reinsurance, 20 F.3d at 1366.

In this case, the pleadings do not affirmatively reveal on their face that the Robstown Defendants acted in good faith. On the contrary, the Amended Complaint alleges that the Robstown Defendants induced the Plaintiff to enter into the loan with Tex-Wave by knowingly making false representations that the City's Surety Bond was enforceable, backed by the City's taxing power, and payable from its general funds. (See PAC at ¶¶ 46-51.)   The

-12-

Amended Complaint further alleges that the Robstown Defendants, despite their representations to Plaintiff, never intended "to obligate the City of Robstown" but rather executed the Surety Bond "merely to move the proceedings forward" between Plaintiff and Tex-Wave. (PAC at ¶ 50.)  In sum, Plaintiff has alleged that the Robstown Defendants tricked Plaintiff into lending over four and half million dollars by making promises they had no intention of keeping and signing a legal document they knew was not enforceable. Accepting these allegations as true, no reasonable public official could have believed that such conduct was consistent with the plaintiff's rights.  Therefore, the pleadings do not reveal that the Robstown Defendants acted in good faith.  Therefore, their motion to dismiss based on official immunity is DENIED.

### 4.  Sovereign Immunity

Defendants contend they are entitled to "sovereign" immunity from the Plaintiff's claims against them.  Sovereign immunity "protects the State of Texas [and its political subdivisions] from lawsuits for damages absent legislative consent." <u>Nueces County v. Ferguson</u> 97 S.W.3d 205, 216 (Tex. App.--Corpus Christi 2002); <u>Chambers</u>, 866 S.W.2d at 658.  In this case, however, Plaintiff has not sued the State of Texas or its political subdivision, the City of Robstown.  Rather, Plaintiff has sued individual city employees for damages resulting from their allegedly-tortious conduct. Whether an individual government employee is entitled to assert the

-13-

defense of sovereign immunity depends on the capacity in which the employee is sued. See, e.g., Tyrrell v. Mays, 885 S.W.2d 495, 499 (Tex. App.--El Paso 1994). "A state employee may be sued in either of two capacities: in his individual capacity, in which event he is personally liable for any judgment rendered against him; or in his official capacity, in which event any adverse judgment is paid by the state." Gonzalez v. Avalos, 866 S.W.2d 346, 349 (Tex. App.--El Paso 1993); see also Vela v. Rocha, 52 S.W.3d 398, 403 (Tex. App.--Corpus Christi 2001). An employee sued in his *official* capacity may raise the defense of sovereign immunity. Nueces County v. Ferguson, 97 S.W.3d 205, 214-15 (Tex. App.--Corpus Christi 2002); see also Gonzalez, 866 S.W.2d at 349; Vela, 52 S.W.3d at 403. An employee sued in his individual capacity, however, "is entitled to raise the defense of official immunity, rather than sovereign immunity." Ferguson, 97 S.W.3d at 214-15; Gonzalez, 866 S.W.2d at 349; Vela, 52 S.W.3d at 403; Tyrrell, 885 S.W.2d at 499 ("Where the question concerns the liability of a governmental officer or employee, rather than the liability of the sovereign itself, the problem is one of official immunity, not of sovereign immunity").

Where a plaintiff's complaint "fails to specify the capacity in which a person is sued, [a court should] look at the course of the proceedings to determine the nature of the liability the plaintiff seeks to impose." Harless v. Niles, 100 S.W.3d 390, 395 (Tex. App.--San Antonio 2002); Ferguson, 97 S.W.3d at 215. In

-14-

<u>Harless</u>, for example, the court found the government officer was
sued in his individual capacity where the plaintiff's complaint:
(1) did not name the state or county as defendants; (2) referred to
the officer as "an individual resident of Guadalupe County"; (3)
made no reference to the officer's official capacity; and (4) did
not ask for relief under the Texas Tort Claims Act. <u>Harless</u>, 100
S.W.3d at 395; <u>cf.</u> <u>Ferguson</u>, 97 S.W.3d at 215-16 (finding that
government officer was sued in his official capacity where the
plaintiff made the same claims against both the county and the
officer and never separately served the officer).

In this case, the Court finds that Plaintiff has sued the
Robstown Defendants in their individual capacities. Although
Plaintiff's Amended Complaint does not specify the capacity in
which the Robstown Defendants were sued, the course of the
proceedings indicates that Plaintiff sued them in their individual
capacities. Notably, all four of the factors the <u>Harless</u> court
considered are also present in this case. Plaintiff has not sued
the City of Robstown, only the individual government employees.
(<u>See</u> PAC at ¶¶ 1-14.) Plaintiff's complaint clearly labels each of
the Robstown Defendants as "an individual residing in Robstown,
Texas"[5] and makes no reference to suing these Defendants in their
official capacities. (<u>See</u> PAC at ¶¶ 7-14.) Nowhere in its Amended
Complaint does Plaintiff invoke the Texas Tort Claims Act.

---

[5] Defendant Paula Wakefield is identified as "an individual
residing in Corpus Christi, Texas". (PAC at ¶ 8.)

Furthermore, in its response to the Robstown Defendants' motion to dismiss, Plaintiff unequivocally stated that it "has sued the Council Members in their individual capacities for their tortious conduct." (Pl.'s Resp. at 8.) Because the Plaintiff sued the Robstown Defendants in their individual capacities only, they are not entitled to raise the defense of sovereign immunity.[6] Defendants' motion to dismiss on that ground is therefore DENIED.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (D.E. 32) is DENIED.

SIGNED and ENTERED this 5th day of October, 2006.

_____
Janis Graham Jack
United States District Judge

---

[6] The Robstown Defendants' motion to dismiss also makes several references to the Texas Tort Claims Act ("TTCA") and various protections provided by that statute. The Defendants may not rely on the provisions of the TTCA, however, because a government employee sued in his or her individual capacity is not "entitled to the protections afforded by the TTCA merely by virtue of his position as an employee of a governmental unit of the State of Texas." Harless v. Niles, 100 S.W.3d 390, 395 (Tex. App.--San Antonio 2002); see also Copeland v. Boone, 866 S.W.2d 55, 58 (Tex. App.--San Antonio 1993) (a government employee sued in his or her individual capacity is not granted additional protections and immunities by the TTCA).