IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MEECORP CAPITAL MARKETS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. C-06-148 |
| | § | |
| TEX-WAVE INDUSTRIES, LP, et al, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Plaintiff Meecorp Capital Markets' Motion for Partial Summary Judgment (D.E. 50). For the reasons discussed below, Plaintiff's motion is GRANTED.

**I.    JURISDICTION**

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

**II.   BACKGROUND**

On March 30, 2006, Plaintiff Meecorp Capital Markets, LLC, ("Plaintiff") filed suit in this Court against Defendants Tex-Wave Industries, LP, Monty Guiles, David Croft, Ysassi & Ysassi, PC, and Epimenio Ysassi alleging breach of contract and negligent misrepresentation claims. (Pl.'s Orig. Compl. at ¶¶ 2-6, 19-28.) On October 27, 2006, Plaintiff filed a "Motion for Partial Summary Judgment" against Tex-Wave Industries, LP, ("Tex-Wave"), Monty Guiles, and David Croft, (collectively, "Defendants") arguing that

there are no genuine issues of material fact as to its breach of contract claims and that Plaintiff is entitled to judgment as a matter of law.  (D.E. 50.)  On November 10, 2006, Defendants filed a response in opposition to Plaintiff's motion.  (D.E. 54.)  On December 6, 2006, Plaintiff filed a reply to the Defendants' response.  (D.E. 58.)  The following facts are not in dispute:

On June 15, 2004, Plaintiff and Tex-Wave entered into a Loan Agreement in which Plaintiff agreed to lend Tex-Wave a principal amount of $4,620,000.00 for the building of a hot-dip galvanizing facility in Robstown, Texas.  (Pl.'s Ex. ("PEX") A at ¶ 1, B-1; Def.'s Answer ("DA") at ¶ 1.4)  In return, Tex-Wave executed three promissory notes in the amounts of $1,670,000.00, $1,662,000.00, and $1,288,000.00.  (PEX B at ¶ 4, B-2; DA at ¶ 1.5.)  In addition, Defendants Monty Guiles ("Guiles") and David Croft ("Croft") each executed a personal "Guaranty" agreement, in which they guaranteed the repayment of the Tex-Wave promissory notes to the Plaintiff.  (PEX B at ¶ 5, B-3; DA at ¶ 1.6.)  Defendants Tex-Wave, Guiles, and Croft also executed a Pledge Agreement which provided, among other things, that if an "Event of Default" occurred under the Loan Agreement, Plaintiff "shall have the right to vote the Pledged Interests [of the partnership] and to exercise all other rights of a partner under the partnership agreement of [Defendant Tex-Wave]." (PEX B at ¶ 10, B-5 at ¶ 7(c).)

Under the promissory notes, Tex-Wave was obligated to pay

interest on the loan on the first day of each month, beginning on July 1, 2004 and continuing until the maturity date of the loan. (PEX B at ¶ 6, B-2 at 2; DA at ¶ 1.15.)  Tex-Wave, however, admits that it "failed to make interest payments on November 1, 2005 and thereafter."  (DA at ¶ 1.15; PEX B at ¶ 7.)  On November 9, 2005, Plaintiff sent Tex-Wave, Croft, and Guiles, a written notice of default indicating that:

> unless Tex-Wave makes payment of the November Interest Payment together with the late fee provided for in the Note in the total amount of $52,937.00 to [Plaintiff] in good collectable funds within five (5) days after receipt of this notice, Tex-Wave shall be in default under the terms of the Loan Agreement and [Plaintiff] will have the right to exercise all of its rights and remedies under the Loan Agreement and other loan documents . . .

(PEX B-4; DA at ¶ 1.12.)  When Tex-Wave failed to make the interest payment (see DA at ¶ 1.15), Plaintiff accelerated the loan and filed suit in this Court.

### III. DISCUSSION

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about

a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of [the record] which [it] believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the movant bears the burden of proof on a claim for which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in [its] favor." Fontenot v. UpJohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). In other words, a plaintiff "cannot attain summary judgment unless the evidence that [it] provides on [its claims] is conclusive." Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998). A plaintiff's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the [plaintiff]," otherwise summary judgment cannot be granted. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).

Once the moving party has carried her burden, the nonmovant

"may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the

province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).  If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.   Claim on Promissory Notes against Tex-Wave**

"Ordinarily, suits on promissory notes provide fit grist for the summary judgment mill." Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1023 (5th Cir. 1995) (quoting FDIC v. Cardinal Oil Well Servicing Co., 837 F.2d 1369, 1371 (5th Cir. 1988)); see also, e.g., NCNB Texas Nat. Bank v. Johnson, 11 F.3d 1260, 1264 (5th Cir. 1994); Topalian v. Ehrman, 954 F.2d 1125, 1137 (5th Cir. 1992) ("We have said before that because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment").

In this case, the undisputed evidence demonstrates that the promissory notes are in default.  Defendant Tex-Wave admits in its Answer (D.E. 5) that it "entered into a Loan Agreement whereby [Plaintiff] made a loan to Tex-Wave in the principal amount of $4,620,00.00," in return for which "Tex-Wave executed three promissory notes in the amounts of $1,670,000.00, $1,662,000.00, and $1,288,000.00."  (DA at ¶¶ 1.4, 1.5.)  Furthermore, Tex-Wave

admits that, under the promissory notes, "the interest payments on the principal sum were due beginning on July 1, 2004" and further "admit[s] that [the Defendants] failed to make interest payments on November 1, 2005 and thereafter." (DA at ¶ 1.15.) Under the terms of the promissory notes:

> all payments due . . . may be accelerated and [each] Note shall become immediately due and payable . . . upon the occurrence of any of the following events (each an "Event of Default"): (1) Borrower fails to perform or observe any term or provision of this note with respect to payment within five (5) business days after notice.

(PEX B-2 at 3.) Finally, Tex-Wave admits that notice letters "were sent and received" after Tex-Wave failed to make its November interest payment and that Tex-Wave did not make its interest payments thereafter. (See DA at ¶¶ 1.12, 1.15.) Therefore, the undisputed evidence shows that Tex-Wave is in default on the promissory notes and Plaintiff is entitled to accelerate the balance of the loan. The only remaining question is whether Tex-Wave has some defense to the enforcement of the promissory notes.

### 1.   Defenses to the Promissory Notes

As a defense to liability under the promissory notes, Tex-Wave argues that, during the course of this litigation, Tex-Wave made an agreement with Plaintiff that: (1) Tex-Wave was to pay Plaintiff a monthly rent of $28,000.00 and (2) as long as Tex-Wave made the monthly rent payments, Plaintiff would not pursue a judgment against Tex-Wave, allowing Tex-Wave to "grow the business and obtain outside financing." (See Def.'s Resp. at ¶ 2.1.) Although

Plaintiff denies that it waived its right to sue under the original promissory notes, Tex-Wave contends that "[a]t the very least, a fact issue remains as to whether or not [Plaintiff] and Tex-Wave entered into an enforceable agreement in which [Plaintiff] agreed not to take any further action . . . ." (Def.'s Resp. at ¶ 2.6.)

Defendant Tex-Wave does not cite *any* legal authority in support of its claim that summary judgment should not be granted.[1] Nor does Tex-Wave indicate or identify the legal theory or theories on which it bases its defense. Generally, in order to avoid summary judgment, a party must inform the Court of the legal reason why summary judgment should not be entered. See, e.g., Keelan v. Majesco Software, Inc., 407 F.3d 332, 339-40 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived") (quoting Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002)). As a result of Defendant Tex-Wave's failure to cite any authority, this Court is forced to guess at the legal theory on which it bases its defense.

Typically, a claim that the parties entered into a new agreement or contract which extinguished the obligations of an old agreement is known as either (1) a "novation," or (2) an "accord and satisfaction." See, e.g., Flanagan v. Martin, 880 S.W.2d 863,

---

[1] In fact, Defendants failed to cite any legal authority *at all* in their "Response to Plaintiff's Motion for Partial Summary Judgment." (D.E. 54)

867 (Tex. App.--Waco 1994).[2]  "The affirmative defense of accord and satisfaction rests upon a new contract, express or implied, in which the parties agree to the discharge of an existing obligation in a manner otherwise than as originally agreed."  Jenkins v. Steakley Bros. Chevrolet Co., 712 S.W.2d 587, 590 (Tex. App.--Waco 1986); see also Metromarketing Services, Inc. v. HTT Headwear, Ltd., 15 S.W.3d 190, 197 (Tex. App.--Houston 2000) ("An accord and satisfaction occurs when parties agree to the discharge of an existing obligation in a manner other than in accordance with the terms of their original contract"); see also Womco, Inc. v. Navistar Intern. Corp., 84 S.W.3d 272, 280 (Tex. App.--Tyler 2002).  Similarly, a "novation" is "the substitution of a new agreement in place of an existing agreement between the same parties."  Superior Laminate & Supply, Inc. v. Formica Corp., 93 S.W.3d 445, 448-49

---

[2] The promissory notes in this case each contain a choice-of-law provision indicating that they are to be "governed by and construed in accordance with the laws of the State of New Jersey."  (PEX B-2 at 4.)  By its own terms, however, this choice-of-law provision does *not apply* to the question of whether the parties entered into a *new* contract which extinguished Tex-Wave's obligations under the original promissory notes.  See Thompson and Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d 429, 433 (5th Cir. 1996) ("Narrow choice of law provisions are to be construed narrowly").  Rather, the Court finds that the question of whether a new contract has been created is governed by Texas law.  See Jackson v. West Telemarketing Corp. Outbound, 245 F.3d 518, 523 (5th Cir. 2001) (contract governed by Texas law where the relevant property was in Texas, the defendant resided in Texas, and the only connection with a foreign jurisdiction was the residence of the plaintiffs); see also Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 312 (5th Cir. 2000) (citing Restatement (Second) of Conflict of Laws § 145).

(Tex. App.--Houston 2002). There are only minor differences between the defenses of "novation" and "accord and satisfaction":

> The satisfaction in an accord and satisfaction is usually the *performance* of the new promise, rather than the *new promise* itself. When, however, the new promise itself is accepted as the satisfaction, the accord is more properly termed a novation.

Flanagan, 880 S.W.2d at 867; DoAll Dallas Co. v. Trinity Nat. Bank of Dallas, 498 S.W.2d 396, 400 (Tex. Civ. App.--Texarkana 1973).

Both "accord and satisfaction" and "novation" are affirmative defenses and the burden of establishing either defense "is on the party asserting it." See, e.g., Honeycutt v. Billingsley, 992 S.W.2d 570, 577 (Tex. App.--Houston 1999) (accord and satisfaction and novation are affirmative defenses, "[t]herefore, the burden of proof is on the party asserting [the defense]"); Hycarbex, Inc. v. Anglo-Suisse, Inc., 927 S.W.2d 103, 108 (Tex. App.--Houston 1996); CTTI Priesmeyer, Inc. v. K & O Ltd. Partnership, 164 S.W.3d 675, 680-81 (Tex. App.--Austin 2005) ("The party urging novation as a defense bears the burden of proof"). Because Tex-Wave has the burden on these defenses, "it must come forward with summary judgment proof sufficient to raise an issue of fact on each element of the defense." Allied Chemical Corp. v. DeHaven, 752 S.W.2d 155, 159 (Tex. App.--Houston 1988). In order to establish the defense of "accord and satisfaction," the Defendant must show: (1) that the parties have entered into a new contract, express or implied, (2) which discharges the obligations under the original contract in a

manner otherwise than as originally agreed. Womco, Inc., 84 S.W.3d at 280. Likewise, "[a] party raising the defense of novation must prove (1) the validity of a previous obligation; (2) an agreement among all parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement." Fulcrum Central v. AutoTester, Inc., 102 S.W.3d 274, 277-78 (Tex. App.--Dallas 2003) (citing Vickery v. Vickery, 999 S.W.2d 342, 356 (Tex. 1999)); Vandeventer v. All American Life & Cas. Co., 101 S.W.3d 703, 712 (Tex. App.--Fort Worth 2003).

"Under either theory, the parties must intend to release the other from a prior obligation and to assume a new one." Honeycutt, 992 S.W.2d 570, 577 (Tex. App.--Houston 1999); FDIC v. Waggoner, 999 F.2d 826, 829 (5th Cir. 1993) (the new contract must extinguish the old in order to establish the defense); Allied Elevator, Inc. v. East Texas State Bank of Buna, 965 F.2d 34, 37 (5th Cir. 1992) (stating that a new contract "will be considered a novation, accord, satisfaction, modification . .. only if [defendant] can show that that was the intention of the parties"). The intent to discharge a previous obligation "*must be clear; novation is never presumed.*" CTTI Priesmeyer, 164 S.W.3d at 680-81 (emphasis supplied); Fulcrum Central, 102 S.W.3d at 277-78. Although "[t]he intent to accept the new obligation in lieu of and in discharge of the old one may be inferred from the facts and circumstances surrounding the transaction and the conduct of the parties,"

-11-

Flanagan, 880 S.W.2d at 867, the intent to extinguish the old obligation must be unmistakably clear.  As one court noted:

> The evidence must establish an assent of the parties to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim. The minds must meet and where resting in implication, the facts proved must irresistibly point to such conclusion. There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation.  The condition must be plain, definite, and certain and the statement accompanying the tender of a sum less than the contract price must be so clear, full, and explicit that it is not susceptible of any other interpretation.

Hycarbex, Inc. v. Anglo-Suisse, Inc. 927 S.W.2d 103, 108 (Tex. App.--Houston 1996) (citing Jenkins v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969)); U.S. Fidelity & Guaranty Co. v. Hutson Const. Co., 544 S.W.2d 762, 765 (Tex. Civ. App.--Dallas 1976) ("the evidence must conclusively establish that the tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation"); Fulcrum Central, 102 S.W.3d at 277-78 ("It must clearly appear that the parties intended a novation").

In this case, Defendant Tex-Wave has failed to meet its burden of presenting evidence to support either the defense of "accord and satisfaction" or "novation."  In support of its claim that the parties reached a new agreement which supplants the old Loan Agreement and promissory notes, Tex-Wave attaches several emails, as well as transcripts of audio-taped phone conversations, between

Defendant Monty Guiles and Michael Edrei, an officer of Plaintiff Meecorp Capital Markets.  (See Def.'s Ex. ("DEX") 1, 2.)  These documents, however, are not attached to an affidavit, nor are they otherwise authenticated by an individual with personal knowledge of their contents.[3]  It is well-settled that "[u]nauthenticated documents are improper as summary judgment evidence."[4]  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994); see also Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir. 1991) (a party may not oppose summary judgment with unauthenticated documents because such documents are "not the kind of evidence described in Rules 56(c) and 56(e)"); Haynes v. Pennzoil Co., 141 F.3d 1163, 1998 WL 197784 at *3 (5th Cir. March 31, 1998) (unpublished) ("it is the burden of the party offering documentary evidence to provide proof of its authenticity; it is not the burden of the opposing party to prove that the evidence is not authentic").  Therefore, Tex-Wave has failed to present any evidence that this Court can properly consider on summary judgment.

Even if this Court did consider the unauthenticated documents, Defendant Tex-Wave still has not raised a fact issue as to its affirmative defense because it has failed to present evidence that

---

[3] As a result, Plaintiff objected to the authenticity of these documents in its Reply.  (See Reply at 3-4.)

[4] The Court also notes that the documents are not among the categories of self-authenticating documents enumerated in Federal Rule of Evidence 902.  See Fed. R. Evid. 902(1)-(12).

the parties intended to extinguish Tex-Wave's obligations under the original Loan Agreement and promissory notes. In fact, the documents produced by Tex-Wave show that Plaintiff did *not intend* to release Tex-Wave from its obligations. For example, Plaintiff's managing director, Michael Edrei ("Edrei"), wrote in one email:

> Tex-Wave is in default and the loan was called. Furthermore the property was foreclosed on. As I told you, we are not willing to wait until you stabilize your business. You need a white knight to bail you out-- Meecorp is not it. Every time you pay rent you buy yourself a month--for a limited time. . . . If rent is not received by the second day of the month, we will start eviction procedure. I can't emphasize more how urgent your situation is--so go and get busy. Meecorp did not and still does not have a side agreement with Tex-Wave of any kind. The Loan documents control.

(DEX 1, Email on June 16, 2006.) Similarly, in another email, Edrei described the arrangement between the parties as follows:

> In the meanwhile, and temporarily, we expect Tex-Wave to pay Meecorp rent of $28,000 per month beginning on May 2, 2006. This is a month-by-month rental arrangement between Meecorp and Tex-Wave which may be cancelled on short notice.

(DEX 1, Email on June 1, 2006.) In another document describing the arrangement between the parties, Plaintiff indicates that it would allow Tex-Wave to "occupy and conduct its normal business operations in the [Robstown, Texas] Facility" if Tex-Wave agreed to pay rent. (See DEX 1, Temporary Occupancy Letter.) Plaintiff, however, expressly indicated that it was not "leasing" the Robstown facility to Tex-Wave, but rather granting Tex-Wave a "temporary license" which could be revoked by Plaintiff. (Id.) The letter

-14-

further emphasizes that "[t]his license to occupy shall not be construed as a waiver or limitation of any legal or equitable rights or remedies that Meecorp may have." (Id.)

In sum, Tex-Wave has no evidence tending to show that Plaintiff intended to enter a new agreement which would extinguish Tex-Wave's obligations under the promissory notes and original Loan Agreement. At best, Tex-Wave's evidence shows that Plaintiff agreed that it would not attempt to evict Tex-Wave from the Robstown facility as long as Tex-Wave continued to pay rent. This is insufficient to establish an "accord and satisfaction" or "novation" of the original Loan Agreement. The mere fact that Tex-Wave thought that Plaintiff would not pursue a court-judgment is insufficient because there is no evidence that Plaintiff intended that result as well. As one court noted: "accord and satisfaction, being dependent upon agreement, only occurs where the parties mutually assent to it. Their intention is a controlling element. In such a transaction there can be no agreement expressed or implied when both parties have no intention to make it, *or when one has but the other has not*." Anderson Dev. Co., Inc. v. Producers Grain Corp., 558 S.W.2d 924, 926-27 (Tex. Civ. App.--Eastland 1977). Accordingly, Tex-Wave has failed to meet its burden of establishing a defense to the promissory notes, and Plaintiff's motion for summary judgment against it is GRANTED.

### C.  Claim on the Personal Guaranty Agreements Against Monty Guiles and David Croft

Plaintiff also moves for summary judgment against Defendants Monty Guiles and David Croft for breach of their personal guaranties of the Tex-Wave Loan.  Like Plaintiff's claim on the promissory notes, the undisputed evidence shows that Defendants Croft and Guiles are liable on the personal guaranties. Defendants admit in their answer that "Monty Guiles and David Croft, limited partners of Tex-Wave Industries, each executed a document labeled 'Guaranty' under the loan agreement," (DA at ¶¶ 1.6, 1.17), in which they each "guarantee[d] absolutely and unconditionally to Lender the payment of the Debt."  (PEX B-3 at 1, B at ¶ 5.) Furthermore, as noted above, the three promissory notes went into default after Tex-Wave "failed to make interest payments on November 1, 2005 and thereafter" and Plaintiff gave the Defendants, including Defendant Guiles and Croft, written notice of the default.  (DA at ¶¶ 1.12, 1.15; PEX B-4.)

Defendants Croft and Guiles oppose summary judgment based solely on a provision of the guaranty agreements, which provides:

> Notwithstanding anything else contained herein to the contrary, if, after a default shall occur under the Loan Agreement and the Note, if the Guarantors shall cooperate with the Lender in realizing on the collateral, including without limitation, the foreclosure of the Mortgage, and shall not in any way interfere with the Lender in connection therewith, and the foreclosure sale shall take place without interference by any of the Guarantors or principals, officers, or directors of the Borrower, then the Lender shall waive the provisions of this Guaranty and shall deliver the Guaranty back to the Guarantors

marked "satisfied".

(PEX B-3 at 6; see also Def.'s Resp. ("DR") at ¶ 2.7.)  According to Defendants Croft and Guiles, they "are not the majority owners in the business and cannot make any decisions to interfere" and "have cooperated with any and all requests of Meecorp, even offering to turn over the keys."  (DR at ¶ 2.8.)  Therefore, Defendants reason that "[t]here is a fact question as to whether or not default judgment is appropriate against Mr. Guiles and Mr. Croft considering their cooperation and Meecorp's failure to show any evidence that Mr. Guiles and Mr. Croft, individually did not cooperate."  (DR at ¶ 2.9.)

Defendant's argument is unpersuasive, however, because it is well settled that the Plaintiff does not have the burden of showing that Guiles and Croft "did not cooperate."  Rather, the burden is on Defendants Guiles and Croft to present some evidence showing that there is a genuine issue of material fact as to whether or not they cooperated.  As one court noted:

> Where a party seeks to avoid a contractual obligation by reason of the happening of an event or condition stipulated in a contract, the burden of establishing the occurrence of the condition rests upon the party asserting it.  Moreover, proof of the happening of such an event amounted, in effect, to a separate affirmative defense . . . to which the burden of proof rested upon defendant.

Fitzmaurice v. Van Vlaanderen Mach. Co., 264 A.2d 740, 744 (N.J. Super. A.D. 1970) *affirmed* 273 A.2d 561, 562 (N.J. 1971); see also American Ass'n of University Professors, Bloomfield College Chapter

v. Bloomfield College, 346 A.2d 615, 616-17 (N.J. Super. A.D. 1975);[5] Hassell Const. Co., Inc. v. Stature Commercial Co., Inc., 162 S.W.3d 664, 667 (Tex. App.--Houston 2005) ("The burden of proving the happening of a contingency which, by the terms of the contract, would discharge the party from liability . . . is on the party who seeks to avoid the contract or excuse a failure to perform it on that ground); Bracton Corp. v. Evans Const. Co., 784 S.W.2d 708, 710 (Tex. App.--Houston 1990) (same). Defendants Croft and Guiles, however, have presented the Court with no evidence that they are entitled to a discharge of their liability because they cooperated with the Plaintiff in conducting the foreclosure or realizing on the collateral. Rather, Defendants Croft and Guiles provided only an unsupported statement in their response to the motion for summary judgment, that they "have cooperated" with Plaintiff. (See DR at ¶ 2.8.) "[S]uch conclusory, unsupported assertions are insufficient to defeat a motion for summary judgment." Marshall on Behalf of Marshall v. East Carroll Parish

---

[5] New Jersey law is applicable to this question because the Guaranty agreements in this case explicitly provide that each personal Guaranty "is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the state of New Jersey . . . and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state". (PEX B-3 at 5.) Texas law also places the burden on the Defendants. See, e.g., Decker v. Commercial Credit Equipment Corp. 540 S.W.2d 846, 849 (Tex. Civ. App. 1976) ("The general rule is that the burden of proving the happening of a contingency which would discharge a party from liability under a contract is upon the party who seeks to avoid liability upon that ground").

Hosp. Service Dist., 134 F.3d 319, 324 (5th Cir. 1998).  The only evidence on record pertaining to this issue is from the Plaintiff, and shows that Defendants may have interfered with Plaintiff by seeking and obtaining a state court injunction prohibiting Plaintiff from transferring the collateral.  (PEX D at 1-2, E.) Therefore, Defendants Guiles and Croft have not raised a fact issue as to whether they are relieved from liability under the Guaranty agreements.  Accordingly, Plaintiff's motion for summary judgment against Defendants Guiles and Croft is GRANTED.

    **D.    Relief Sought**

Plaintiff has provided evidence that the total amount due on the promissory notes, including interest and late fees, is $7,013,869.93.  (PEX B at ¶ 11.)  Plaintiff has also has presented evidence that Defendants Tex-Wave, Guiles, and Croft executed a Pledge Agreement which provided, among other things, that if an "Event of Default" occurred under the Loan Agreement, Plaintiff "shall have the right to vote the Pledged Interests [of the partnership] and to exercise all other rights of a partner under the partnership agreement of [Defendant Tex-Wave, LP]."  (PEX B-5 at ¶ 7(c), B at ¶ 10.)  Defendant has not disputed--or provided any evidence to contradict--that Plaintiff is entitled to this relief.

**IV. CONCLUSION**

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment (D.E. 50) is GRANTED.  It is therefore

adjudged that the Plaintiff recover from Defendants Tex-Wave Industries, LP, Monty Guiles, and David Croft, jointly and severally, the balance due on the three promissory notes, including interest and late fees, in the amount of $7,013,869.93. Furthermore, the Court hereby DECLARES that an Event of Default has occurred under the Loan Agreement between Plaintiff and Defendant Tex-Wave Industries, LP.  Pursuant to the Pledge Agreement executed by Defendants Tex-Wave Industries, LP, Monty Guiles, and David Croft, Plaintiff is entitled to vote the partnership interest of Tex-Wave Industries, LP, until such time as the judgment has been satisfied.

SIGNED and ENTERED this 27th day of December, 2006.

_____
Janis Graham Jack
United States District Judge